**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ERIC M. ELLISON,

    Plaintiff,

v.                                                                  Case No. 3:19-cv-726-J-34PDB

MEGAN J. BRENNAN,
Postmaster General, United States
Postal Service,

    Defendant.

_____

## **O R D E R**

**THIS CAUSE** is before the Court on Defendant's Renewed Motion to Dismiss for Failure to State a Claim (Doc. 36; Motion), filed on February 13, 2020. On August 26, 2019, Plaintiff Eric M. Ellison filed an Amended Complaint (Doc. 12) asserting claims of disability discrimination (Count I), race discrimination (Count II), and retaliation (Count III), pursuant to Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e, and the Rehabilitation Act of 1973, 9 U.S.C. § 791. See generally Amended Complaint. In the instant Motion, Defendant Megan J. Brennan, Postmaster General, United States Postal Service (USPS) moves to dismiss the retaliation claim arguing that Ellison failed to exhaust his administrative remedies for that claim. See Motion at 1.[1] Ellison filed a response in

---

[1] The Court notes that USPS previously filed a motion to dismiss as to all counts of the Amended Complaint. See Defendant's Amended Motion to Dismiss for Failure to State a Claim (Doc. 17; Initial Motion), filed October 1, 2019. In the Initial Motion, USPS moved to dismiss Counts I and II for failure to state a claim, and moved to dismiss Count III, the retaliation claim, for failure to administratively exhaust. See generally Initial Motion. The Court took up the Initial Motion at a hearing on January 30, 2020. See Minute Entry (Doc. 32; Hearing). At the Hearing, the Court denied the Initial Motion as to Counts I and II. Id. As to Count III, the Court denied the Initial Motion without prejudice and authorized USPS to file a supplemental motion to dismiss solely as to Count III. Id. USPS filed the instant Motion in accordance with the Court's instructions. Although USPS states in the Motion that it is "not waiving its other arguments," see Motion at 1 n.1, the Court has previously ruled on those arguments and will not address them again here.

opposition to the Motion on February 27, 2020. See Response Opposing Defendant's Renewed Motion to Dismiss for Failure to State a Claim (Doc. 37; Response). Accordingly, this matter is ripe for review.

**I.      Extrinsic Evidence**

At the outset, the Court notes that USPS submits several documents from the administrative record in support of its Motion to Dismiss for failure to exhaust. Specifically, USPS attaches the following Exhibits to the Motion: 1) a March 4, 2016 Equal Employment Opportunity (EEO) Pre-Complaint Counseling Form (March Counseling Form), 2) a June 15, 2016 EEO Complaint of Discrimination in the Postal Service (Formal Complaint), 3) a June 26, 2016 EEO Pre-Complaint Counseling Form (June Counseling Form), 4) a July 6, 2016 EEO Analyst Decision (Analyst Decision), 5) a September 25, 2017 Administrative Order Reinstating Dismissed Claim and Modifying the Period of Discovery (ALJ Discovery Order), 6) a March 13, 2019 Administrative Order Entering Judgment Adopting and Granting Agency's Motion for Summary Judgment (ALJ Final Order), and 7) a March 21, 2019 Notice of Final Action (EEO Final Notice). In his Response, Ellison objects to the Court's consideration of Exhibits 4, 5, 6 and 7. See Response at 3. According to Ellison, the Court may not consider these documents at this stage of the proceedings as they are not referred to in the Amended Complaint nor central to Ellison's claims. Id. In addition, Ellison contends that this evidence should be stricken because the documents are "not accompanied by a record custodian's certificate of authenticity." Id. (citing Fed. R. of Evid. 901-902). Although Exhibits 1-3 are not accompanied by certificates of authenticity either, Ellison does not object to the Court's consideration of those documents and relies on them

in his Response. See Response at 5-6. Upon review, the Court finds that Ellison's objections to the contested Exhibits are without merit.

In general, a district court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." See Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citing Rule 12(b), Federal Rules of Civil Procedure (Rule(s))). However, the Eleventh Circuit recognizes certain exceptions to this rule. See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010). In his Response, Ellison recognizes one such exception where a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." See Day, 400 F.3d at 1276; Response at 3-4. "In this context, 'undisputed' means that the authenticity of the document is not challenged." Day, 400 F.3d at 1276. Ellison maintains that this exception does not apply here because Exhibits 4-7 are not central to his claims and have not been properly authenticated. See Response at 3. Thus, Ellison concludes that the Court must strike these Exhibits.

However, Ellison fails to recognize a separate exception which allows a court to "take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." See Horne, 392 F. App'x at 802. Pursuant to Federal Rule of Evidence 201(b), a court "may judicially notice a fact that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b)(2). This Rule of Evidence allows the Court to take judicial notice "at any stage of the proceeding." See Fed. R. Evid. 201(d). As such, in Horne, the Eleventh Circuit explained that the district

-3-

court "properly took judicial notice" of court records from a prior case which were "public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" See Horne, 392 F. App'x at 802 (quoting Fed. R. Evid. 201(b)). Similarly, in Bryant v. Avado Brands, Inc., 187 F.3d 1271 (11th Cir. 1999), the Eleventh Circuit held that courts may properly take judicial notice of relevant public documents required by law to be filed with the Securities and Exchange Commission (SEC). See Bryant, 187 F.3d at 1278-79. Indeed, the Bryant court quoted with approval the Second Circuit's rationale that judicial notice of such documents was appropriate in part because "'no serious question as to their authenticity can exist.'" Id. at 1277 (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)). For the same reason, the Court may properly take judicial notice of the Exhibits attached to the Motion. These documents are all part of the EEOC's administrative record and "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." See Fed. R. Evid. 201(b)(2); Horne, 392 F. App'x at 802; Moore v. Potter, No. 3:04-cv-1057-J-32HTS, 2006 WL 2092277, at *5 (M.D. Fla. July 26, 2006) (exercising discretion to take judicial notice of "various filings and decisions of administrative agencies," including the USPS and EEOC); Hicks v. City of Alabaster, Ala., No. 2:11-CV-4107-RDP, 2013 WL 988874, at *7 n.5 (N.D. Ala. Mar. 12, 2013) ("[W]hen considering a motion to dismiss, the court may take judicial notice of the contents of relevant public records, which include EEOC Charges and Right to Sue Letters."); Mann v. Geren, No. CV407-140, 2008 WL 1766779, at *1 n.2 (S.D. Ga. Apr. 17, 2008) ("The Court takes judicial notice of plaintiff's EEOC actions as they are matters of public record.").

Although these administrative records are not subject to <u>reasonable</u> dispute, Ellison attempts to dispute them anyway by asserting that Exhibits 4-7 are not accompanied by a certificate of authenticity.  However, Ellison does not question the actual authenticity of the documents, nor does he offer any reason why USPS would be unable to present these documents in an admissible form at trial.  All of the Exhibits are documents that are required by law to be provided to Ellison as part of the administrative review process, and indeed the Administrative Orders certify service on both Ellison and his counsel of record in this action.  <u>See</u> 29 C.F.R. § 1614.107(b), 108(f), 109(i), 110(a); ALJ Discovery Order at 2; ALJ Final Order at 6.  Notably, Ellison does not contend that he never received these documents or that they are, in any way, inconsistent with his records or recollection. Given Ellison's failure to raise any <u>serious</u> question as to the accuracy or authenticity of the contested Exhibits, the Court exercises its discretion to take judicial notice of all of the administrative records attached to the Motion.  <u>See</u> <u>Barber v. Rubin Lublin, LLC</u>, No. 1:13-CV-975-TWT, 2013 WL 6795158, at *4 (N.D. Ga. Dec. 20, 2013) (taking judicial notice of public records where plaintiff failed to provide "any explanation for his belief that the documents 'may' be fraudulent," or identify "which statements in the documents he believes are not authentic"); <u>see also</u> <u>McKinstry v. IKON Office Solutions, Inc.</u>, No. 1:05-cv-3119-CC-AJB, 2007 WL 9700933, at *4 (N.D. Ga. Jan. 12, 2007) (declining to exclude documents at summary judgment for failure to authenticate where defendants did not challenge the documents as actually being inauthentic, and there was no reason to conclude that the documents could not be authenticated at trial).

**II.     Background**[2]

The underlying allegations in this lawsuit are straightforward.  Ellison is an African American male who has worked as a mail handler at a USPS facility in Jacksonville, Florida since February 12, 2000.  See Amended Complaint ¶¶ 4, 6.  In February of 2003, Ellison sustained an injury to his lower back while working within the scope of his employment with USPS.  Id. ¶ 8.  Ellison received medical care and treatment for this injury and returned to work in January of 2004.  Id. ¶¶ 9-10.  On February 3, 2016, the Manager of Distribution Operations at the USPS facility, Patricia Becker, who is white, assigned Ellison to "a modified job position reducing his daily work hours from eight hours daily to two hours daily thereby reducing his daily pay."  Id. ¶¶ 13-14.  Ellison alleges that Becker did not reduce the daily hours of mail handlers who were of a different race than Ellison, nor did she reduce the hours of mail handlers who were not disabled.  Id. ¶¶ 16-17.  As such, Ellison contends that Becker's decision to reduce his hours was the result of race and disability discrimination.  Id. ¶¶ 14-15.

---

[2] Both parties assert that the instant Motion is governed by Rule 12(b)(6).  See Motion at 1; Response at 2-3.  Notably, however, the Eleventh Circuit has held that motions to dismiss for failure to exhaust such as this are a distinct type of Rule 12(b) motion.  See Bryant v. Rich, 530 F.3d 1368, 1373-77 & n.12 (11th Cir. 2008) (discussing a Rule 12 motion for failure to exhaust in context of the Prison Litigation Reform Act); Tillery v. U.S. Dep't of Homeland Sec., 402 F. App'x 421, 424-25 (11th Cir. 2010) (applying Bryant exhaustion principles to a Title VII case).  As such, despite Ellison's arguments to the contrary, in deciding the instant Motion the Court could properly "consider facts outside of the pleadings" and even "resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  See Bryant, 530 F.3d at 1376; Tillery, 402 F. App'x at 424-25; see also Duberry v. Postmaster Gen., 652 F. App'x 770, 772 (11th Cir. 2016); Brady v. Postmaster Gen., U.S. Postal Serv., 521 F. App'x 914, 916 (11th Cir. 2013); Rueda-Rojas v. United States, 477 F. App'x 636, 637 n.1 (11th Cir. 2012).  Nevertheless, in the matter at hand, the Court is not presented with any factual disputes and the only evidence to be considered is appropriate for judicial notice.  As such, and in light of both parties' reliance on Rule 12(b)(6), the Court will resolve the instant Motion utilizing the standards of Rule 12(b)(6).  Accordingly, the Court accepts all factual allegations in Ellison's Amended Complaint as true, considers the allegations in the light most favorable to Ellison, and draws all reasonable inferences that can be drawn from the allegations in Ellison's favor.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).

On March 14, 2016, Ellison contacted a USPS EEO counselor concerning the foregoing events. Id. ¶ 18; see also Motion, Ex. 1: March Counseling Form. Later, in June of 2016, Ellison submitted a formal USPS EEO Complaint of Discrimination. See Motion, Ex. 2: Formal Complaint; Response at 5. In the Formal Complaint, Ellison checked the boxes for "race," "color," and "disability" discrimination. See Formal Complaint at 1. In the narrative portion of the form, Ellison wrote that on February 3, 2016, Becker moved him "from an area [he] had been working safely [sic] for a year or more," and gave him "a modified bid job for 2 hrs work . . . ." See Formal Complaint at 1-2. Although unclear, Ellison also appears to complain that he was forced to use annual leave to cover the hours he was not allowed to work, when those hours should have been covered by worker's compensation. Id. at 2. Additionally, Ellison asserts that he was "forced to leave the building," and told not to return to work without "documentation." Id. at 1-2. According to Ellison, a white employee with injuries was not treated this way. Id. at 2-3. Ellison explained that he felt Becker was harassing him due to his disability and was "very biased and unfair in dealing with black people." Id. at 2, 3.

On June 26, 2016, Ellison completed a second USPS EEO pre-complaint counseling form. See Motion, Ex. 3: June Counseling Form. In this form, Ellison complained of an incident on June 23, 2016, where he was allegedly instructed to stop "tagging the mail" and report to "robot operation." Id. According to Ellison, he was told that if he "didn't go [he] would have to leave the building." Id. In the June Counseling Form, Ellison identified race, sex, disability and retaliation as the alleged "factor(s) of discrimination." Id. Ellison identified Becker as the person who took the action about which he was complaining and explained that Becker was aware of his prior allegations because

she "attended a meeting with arbitrator and myself."  Id.  Ellison does not reference this incident in the Amended Complaint, although he does allege that the investigator informed Becker of Ellison's allegations against her.  See Amended Complaint ¶ 20.  According to the allegations of his Amended Complaint, Becker then retaliated against Ellison in July 2016, by removing him "from working at the [Jacksonville] facility without pay for approximately one year . . . ."  See Amended Complaint ¶ 21.  In his Response, Ellison states that this occurred "[a] few days" after he completed the June Counseling Form.  See Response at 6.

On July 6, 2016, the USPS EEO agency issued a "Partial Acceptance/Partial Dismissal of Formal EEO Complaint."  See Motion, Ex. 4: Analyst Decision.  In the Analyst Decision, the agency explained that it was accepting for investigation Ellison's claims of race and disability discrimination based on the events of February 3, 2016, as set forth in Ellison's Formal Complaint.  See Analyst Decision at 2.  As to the allegations in the June Counseling Form, the agency stated that it considered that document to be an "amendment to [Ellison's] previous complaint" and would address it in the Decision.  See Analyst Decision at 1.  Nevertheless, the agency decided to dismiss the discrimination and retaliation claims premised on the events set forth in the June Counseling Form, reasoning that Ellison was not a person aggrieved within the meaning of its regulations because he had not suffered harm as a result of the June 23, 2016 incident.  See id. at 2-3, 4-6.  The agency explained that although Ellison was told that he had to report to robot operation or leave the building, he did not "relate or infer that [he] actually [was] made to leave the building or any adverse action was taken against [him]."  Id. at 5.  It is unclear whether this

decision was issued before or after July when Ellison alleges he was removed from the Jacksonville facility, but regardless, that incident is not mentioned in the Analyst Decision.

In 2017, the matter came before an Administrative Law Judge (ALJ). See Motion, Ex. 5: ALJ Discovery Order. On September 25, 2017, the ALJ entered an order extending the discovery period and reinstating the dismissed claim pertaining to the events of June 23, 2016. See id. The matter proceeded and on March 13, 2019, the ALJ entered a final decision in favor of the agency. See Motion, Ex. 6: ALJ Final Order. Notably, the ALJ's decision included consideration of the reinstated claim, which the ALJ defined as the claim which "had to do with [Ellison] being instructed to report to the robot operation on June 23, 2016, and if he did not, he would have to leave the building." See ALJ Final Order at 2 n.4. The EEO issued a Notice of Final Action implementing the decision of the ALJ on March 21, 2019. See Motion, Ex. 7: EEO Final Notice. Ellison initiated the instant action less than 90 days later, on June 17, 2019. See Complaint (Doc. 1). In the Amended Complaint, he asserts claims of race and disability discrimination premised on Becker's reduction of his work hours, and a claim for retaliation arising out of Becker's decision to remove Ellison from the facility in July 2016. See generally Amended Complaint.

### III.     Applicable Law

Prior to bringing an action under Title VII or the Rehabilitation Act, a federal employee must first exhaust his administrative remedies "by bringing [his] complaint before the [Equal Employment Opportunity Commission (EEOC)] and providing it with all of the information that it needs to investigate and resolve the dispute." Holder v. Nicholson, 287 F. App'x 784, 790 (11th Cir. 2008); see also Murphree v. Comm'r, 644 F. App'x 962, 965 (11th Cir. 2016); Shiver v. Chertoff, 549 F.3d 1342, 1344 (11th Cir. 2008). Indeed, "[t]o

successfully exhaust administrative remedies, the information that a claimant provides to the agency must 'enable the agency to determine what complaint of discrimination was made and when it had occurred.'" Council v. Am. Fed'n of Gov't Emps. (AFGE) Union, 477 F. App'x 648, 652 (11th Cir. 2012) (quoting Johnson v. Bergland, 614 F.2d 415, 418 (5th Cir.1980) [3]). "In evaluating whether an employee exhausted administrative remedies," the Court considers "'whether the complainant made a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her.'" See Andrews-Willmann v. Paulson, 287 F. App'x 741, 745 (11th Cir. 2008). Significantly, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Council, 477 F. App'x at 652 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)).

"Prior to filing a formal complaint with the EEOC, federal employees who believe that they have suffered discrimination must contact an EEO counselor within 45 days of the allegedly discriminatory act . . . ." See Holder, 287 F. App'x at 790 (citing 29 C.F.R. § 1614.105(a)(1)). If the matter is not resolved during the counseling period, a federal employee may then file a discrimination complaint and the matter is investigated. See 29 C.F.R. § 1614.105(d), 106(b), 108. At the conclusion of the investigatory period, the EEO agency must provide the employee "with a copy of the investigative file," and notify the employee of his "right to request a hearing and decision from an administrative judge" or "request an immediate final decision . . . from the agency." See 29 C.F.R. § 1614.108(a), (f). Notably, a complainant may amend a complaint "to include issues or claims like or

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

related to those raised in the complaint," "at any time prior to the conclusion of the investigation," or after requesting a hearing, by filing a motion with the administrative judge. 29 C.F.R. § 1614.106(d). Pursuant to the procedures outlined in 29 C.F.R. § 1614.109, the administrative judge assumes "full responsibility for the adjudication of the complaint including overseeing the development of the record." Once the administrative judge issues a decision on the complaint, the relevant EEO agency "shall take final action on the complaint by issuing a final order within 40 days of receipt of the hearing file and the administrative judge's decision." See 29 C.F.R. § 1614.110(a). At that time, "the employee has the option to appeal the decision to either the federal district court or to the EEOC" but either way, "the complainant must file the appeal within 30 days from the final decision." Holder, 287 F. App'x at 790 (citing 42 U.S.C. § 2000e-16(c) and 29 C.F.R. 1614.402(a), 401(a)).

Notably, as relevant to this case, the regulations require the EEO agency to dismiss a complaint prior to any request for a hearing if the complaint fails to state a claim or fails to comply with the applicable time limits, among other reasons. See 29 C.F.R § 1614.107(a). If the EEO agency determines that some but not all of the claims in a complaint should be dismissed, the agency must notify the employee in writing of its determination and the underlying rationale, and place a copy of the decision in the investigative file. See 29 C.F.R. § 1614.107(b). "If the [EEO agency] partially dismisses a complaint, the complainant may initiate an EEOC appeal of the dismissed claims only when a final decision has been taken on the remaining claims." Holder, 287 F. App'x at 790 (citing 29 C.F.R. § 1614.107(b)). However, if the complainant requests an administrative hearing

on his remaining claims, the administrative judge can review the partial dismissal decision. See 29 C.F.R. 1614.107(b).

Significantly, "[t]he purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)); see also Rueda-Rojas v. United States, 477 F. App'x 636, 638 (11th Cir. 2012) ("The purpose of this requirement 'is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer.'" (quoting Brown v. Snow, 440 F.3d 1259, 1262 (11th Cir. 2006))). Thus, a plaintiff's discrimination claims in any subsequent lawsuit will be "limited by the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." Kelly v. Dun & Bradstreet, Inc., 557 F. App'x 896, 899 (11th Cir. 2014) (citing Gregory, 355 F.3d at 1280). This means that a plaintiff "may not raise '[a]llegations of new acts of discrimination' in the judicial proceedings." Hillemann v. Univ. of Central Fla., 167 F. App'x 747, 749 (11th Cir. 2006) (quoting Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989)); see also Kelly, 557 F. App'x at 899 ("[A]llegations of new acts of discrimination that are offered as the essential basis for requested judicial review are not appropriate absent prior EEOC consideration."). However, because courts are "'extremely reluctant to allow procedural technicalities to bar'" discrimination claims, the scope of an EEOC complaint is not "'strictly interpreted.'" See Gregory, 355 F.3d at 1280 (quoting Sanchez v. Std. Brands, Inc., 431 F.2d 455, 460-61, 465 (5th Cir. 1970)); Kelly, 557 F. App'x at 899. Rather, "[t]he proper inquiry is whether the complaint is like or related

to, or grew out of, the allegations contained in the relevant charge." Kelly, 557 F. App'x at 899.  Stated another way, "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint . . . ."  Gregory, 355 F.3d at 1279 (quoting Wu, 863 F.2d at 1547).

**IV.    Discussion**

The retaliation claim set forth in the Amended Complaint is premised on Becker's decision to "remov[e] [Ellison] from work for approximately one year," in July 2016, following Ellison's decision to file the Formal Complaint with the EEOC in June 2016.  See Amended Complaint ¶¶ 21, 31.  This incident is not mentioned in any of the EEOC records filed with the Court, and in his Response, Ellison does not assert that he ever informed the EEOC, formally or informally, of his July 2016 removal from the facility.[4]  Instead, Ellison's position appears to be that his reference to retaliation in the June Counseling Form, in which he complained about being told to report to robot operation or leave the building, is sufficient to exhaust the retaliation claim alleged in the Amended Complaint premised on his suspension in July.  See Response at 5-6.[5]

---

[4] Ellison consistently describes the action Becker took against him in July as a "removal" from the facility, without pay, for one year.  See Amended Complaint ¶¶ 21, 31; Response at 4-6.  Based on this description, the Court interprets the action taken against Ellison to be a suspension, but regardless, the precise nature of the alleged retaliatory action is not material to the arguments raised here.

[5] For reasons that defy explanation, in response to the USPS' fourteen-page brief on the issue of exhaustion, Ellison's counsel filed a seven-page brief which is largely devoted to arguing that Ellison adequately stated a claim for retaliation under federal pleading standards, an issue not raised in the Motion.  See Response at 1-5.  Counsel devotes a mere two paragraphs of argument to the issue of exhaustion and he cites no caselaw.  See Response at 5-6.  Indeed, the entirety of counsel's exhaustion argument is to recite the actions Ellison took in March and June and then conclude from this summary, without explanation, that "Ellison presented, and administratively exhausted, his retaliation claim regarding his eventual removal from the [Jacksonville] facility."  Id. at 6.  From this conclusory statement, and a cite to Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277 (11th Cir. 2004) in a prior section of the brief, the Court, generously, extrapolates Ellison's position to be that his retaliation claim is administratively exhausted because it "'was like or related to, or grew out of,'" the allegations contained in his Formal Complaint and June Counseling Form.  See Response at 3 (quoting Gregory, 355 F.3d at 1280).

To the extent Ellison contends that his suspension from the facility in July 2016 is "'like or related to, or grew out of'" the allegations in his prior EEO filings within the meaning of Gregory, the Court is not persuaded. See Response at 3 (quoting Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277 (11th Cir. 2004)). In Gregory, the plaintiff filed an EEOC charge after she was terminated, and the ultimate act identified in the charge was her termination. See Gregory, 355 F.3d at 1280. Although the plaintiff filed the charge believing her termination was the result of race and sex discrimination, the Eleventh Circuit found that, based on the facts alleged in the charge, a reasonable investigator "could have concluded that what she had complained about [was] retaliation . . . ." Id. at 1280. Thus, in Gregory, the Eleventh Circuit broadly construed the facts alleged in the EEOC charge to encompass a theory of relief (retaliation) that was not specifically identified in the charge. In this case, however, Ellison was removed from the facility after he filed his EEOC Complaint and Counseling Forms. Unlike Gregory, the ultimate act about which he now complains, his suspension, is not mentioned in the EEOC documents because it had not yet occurred. See Formal Complaint; June Counseling Form. Thus, Ellison is not asking this Court to broadly interpret the facts alleged in his administrative filings to encompass a new theory of relief, as in Gregory, instead, Ellison is asking the Court to broadly interpret the claims in his administrative filings to encompass new, discrete allegations of wrongdoing.

Upon careful consideration, the Court declines to do so. Notably, in both the Formal Complaint and the June Counseling Form, Ellison complains of job reassignments which he contends were discriminatory or retaliatory. In contrast, the retaliation claim in the Amended Complaint is based on a separate adverse action, Ellison's suspension. The

-14-

suspension constitutes a new and discrete act of retaliation "offered as the essential basis for requested judicial review . . . ." See Kelly, 557 F. App'x at 899; Bennett v. Chatham County Sheriff Dept., 315 F. App'x 152, 161 (11th Cir. 2008); see also Holder, 287 F. App'x at 793. Such "[d]iscrete acts of discrimination, … that occur after the filing of an EEOC complaint must first be administratively reviewed before they may serve as a basis for a judicial finding of discriminatory conduct." Kelly, 557 F. App'x at 899; see also Ray v. Freeman, 626 F.2d 439, 442 (5th Cir. 1980) ("Discrete acts of discrimination which occur after the filing of an EEO complaint must first be reviewed administratively before such acts may serve as the basis for a finding of discriminatory conduct justifying remedial action by the court."). Because Ellison's suspension was not part of his Formal Complaint or any subsequent amendment, his retaliation claim premised on that event is not properly exhausted. See Haugabrook v. Cason, 518 F. App'x 803, 809 (11th Cir. 2013).

Significantly, Ellison does not argue or present any evidence that the EEOC actually investigated his July suspension or was ever aware of that event. Indeed, the Analyst Decision cites the lack of an adverse employment action, such as being "made to leave the building," as the basis for the agency's decision to dismiss Ellison's retaliation claim arising out of the June incident. See Analyst Decision at 5. In light of this decision, Ellison knew that the agency had not considered his suspension and was not investigating his retaliation claim. Ellison could have sought to amend his Formal Complaint to include the July suspension, as he had previously done in June via the June Counseling Form, yet there is no evidence that he did so. See Duble v. FedEx Ground Package Sys., Inc., 572 F. App'x 889, 893 (11th Cir. 2014) (finding a retaliatory termination claim not properly exhausted where the plaintiff's "EEOC claim was still pending when he was terminated . .

. and he had the opportunity to amend his EEOC charge or file a new charge relating to his termination," yet chose not to do so). To the contrary, the ALJ Discovery Order reinstating the retaliation claim and the ALJ Final Order rejecting that claim both demonstrate that Ellison's suspension was not considered during the administrative review process. Absent any evidence that Ellison attempted to raise his suspension during the administrative process, the Court cannot find that Ellison made a "good-faith effort to comply with the pertinent regulations and timely seek administrative remedies" as to this claim. See Rueda-Rojas, 477 F. App'x at 638. Indeed, to find Ellison's retaliation claim properly exhausted under the circumstances of this case would completely undermine the purposes of exhaustion. See Francois v. Miami Dade Cnty., Port of Miami, 432 F. App'x 819, 822 (11th Cir. 2011).

Although Ellison's suspension was not mentioned in his EEO filings nor investigated by the agency, the Court notes that there is some authority to suggest that Title VII claims of post-charge retaliation need not be separately exhausted. See Gupta v. East Tex. State Univ, 654 F.2d 411 (5th Cir. Unit A Aug. 28, 1981); Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 168-69 (11th Cir. 1988). In the Motion, USPS discusses these two cases and presents an extensive argument as to why the Court should not apply them here. See Motion at 4-14. In his Response, Ellison's counsel does not invoke this exception in support of exhaustion, respond to the USPS's arguments on that issue, or even reference these cases. See Response at 3, 5-6. Given Ellison's apparent decision not to rely on the Gupta exception in his brief, the Court will not consider its application here and need not reach the issues raised in the government's Motion. See Reid v. Naples Cmty. Hosp., Inc., No. 2:16-cv-33-FtM-29CM, 2017 WL 960634, at *4 n.13 (M.D. Fla. Mar. 13, 2017)

-16-

(acknowledging the Gupta exception but not addressing it because plaintiff had not argued that it applied).[6]  Because Ellison did not amend his Formal Complaint to include his July suspension or otherwise seek administrative review of this employment action, the Court finds that Ellison failed to exhaust his retaliation claim.  Accordingly, the Court will grant the USPS Motion and dismiss Count III of the Amended Complaint.  As such, it is

---

[6] Regardless, the Court notes that the continued viability of this exception is a matter of some dispute as both Gupta and Baker were decided before the Supreme Court's decision in Morgan where the Court held that discrete acts of employment discrimination and retaliation—such as termination—are separate, actionable incidents that must be timely exhausted in accordance with Title VII.  See Morgan, 536 U.S. at 113-14.  Following Morgan, circuit courts have been split on whether discrete acts of post-charge retaliation must be separately exhausted.  See Bennett, 315 F. App'x at 162 n.7 (noting that circuits disagree on whether, following Morgan, discrete acts of retaliation must be exhausted, but not resolving the issue).  Although the Eleventh Circuit has not had occasion to decide the issue, it has specifically noted that "Title VII requires a charge to be filed 'after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1), and that '[o]ccurred means that the practice took place or happened in the past.'"  See E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 n.5 (11th Cir. 2002) (quoting Morgan, 536 U.S. at 109); see also Council, 477 F. App'x at 652 ("'Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.'" (quoting Morgan, 536 U.S. at 114)).

Significantly, in an unpublished decision, the Eleventh Circuit has interpreted the Gupta and Baker exception to apply in only narrow circumstances.  See Duble v. FedEx Ground Package Sys., Inc., 572 F. App'x 889, 893 (11th Cir. 2014).  Specifically, the Duble court observed that in both Baker and Gupta, the plaintiffs had already commenced lawsuits on their prior EEOC charges when the retaliation at issue purportedly occurred.  See Duble, 572 F. App'x at 893 (citing Gupta, 654 F.2d at 413-14 and Baker, 856 F.2d at 168-69).  In contrast, the alleged retaliatory termination in Duble occurred nearly two years prior to the filing of the federal lawsuit and while the initial EEOC charge was still pending.  See id.  As such, the Duble court reasoned that the case was "factually distinguishable from Gupta and Baker," such that "the Gupta rule does not apply."  Id.  Because the Duble plaintiff "had the opportunity to amend his EEOC charge or file a new charge relating to his termination" and chose not to, the court held that he had failed to exhaust his administrative remedies.  Id.; but see Thomas v. Miami Dade Pub. Health Trust, 369 F. App'x 19, 23 (11th Cir. 2010) (applying Gupta and Baker outside the specific circumstances identified in Duble).

Notably, district courts in the Eleventh Circuit are split on whether to follow this non-binding, unpublished decision.  Compare Robinson v. Koch Foods of Ala., No. 2:13-cv-557-WKW, 2014 WL 4472611, at *2 (M.D. Ala. Sept. 11, 2014) (applying Duble and finding a retaliation claim unexhausted) with Baskerville v. Sec'y of the Dep't of Veterans Affairs, 377 F. Supp. 3d 1331, 1335-36 (M.D. Fla. 2019) (collecting cases) (declining to apply Duble as unpublished, non-binding authority); see also Tanniehill v. Ball Healthcare, No. 2:08-cv-01387-HGD, 2010 WL 11614278, at *8-9 (N.D. Ala. May 18, 2010) (finding that after Morgan discrete acts of retaliation occurring after an initial charge must be administratively exhausted without addressing Gupta or Baker); Terhune v. Potter, No. 8:08-cv-1218-T-23MAP, 2009 WL 2382281, at *3-4 (M.D. Fla. July 31, 2009) (same); Green v. Office of the Sheriff's Office, No. 3:99-CV-658-J-21-HTS, 2002 WL 35630102, at *3 (M.D. Fla. Nov. 4, 2002) (finding plaintiff failed to exhaust claim based on a discrete act of retaliation because Gupta did not survive Morgan).  Upon due consideration, the Court is persuaded by the analysis in Duble and finds it entirely applicable here.  Because Ellison opted not to amend his Formal Complaint to include a claim based upon his suspension, or raise this incident during the investigation, the Court finds that any claim based on the suspension is not properly exhausted.  See Duble, 572 F. App'x at 893; Morgan, 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

**ORDERED**:

1. Defendant's Renewed Motion to Dismiss for Failure to State a Claim (Doc. 36) is **GRANTED**.

2. Count III of the Amended Complaint (Doc. 12) is **DISMISSED.**

**DONE AND ORDERED** in Jacksonville, Florida on May 18, 2020.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record